## STATE v. OZIE CARTER
### AND
## STATE v. RICHARD WILLIAM TOYER.

(Filed 14 December, 1966.)

**1. Criminal Law § 71—**

Where the officer testifying to incriminating statements made by defendants states that each defendant was warned of his constitutional right to remain silent, that anything he said might be used against him, that he was entitled to a lawyer before answering any questions, and there is nothing in the record to suggest any force, threat, intimidation or promise inducing defendants' statements, the lower court's ruling that the confessions were competent will not be disturbed. *Miranda v. Arizona*, 384 U.S. 436, is not applicable to this prosecution occurring prior to the rendition of that decision.

**2. Same; Criminal Law § 108—**

A statement by the court in the presence of the jury that he had found incriminating statements made by defendants to be voluntary, *held* to constitute an expression by the court that the statements introduced in evidence were in fact made by defendants, and is prejudicial error. G.S. 1-180.

**3. Criminal Law § 161—**

Error of the court in expressing an opinion on the evidence in the presence of the jury cannot be corrected by an instruction of the court that the statement by the court was inadvertent and should not be considered.

**4. Constitutional Law § 31—**

The court should allow a defendant's request for permission to examine notes used by a State's witness to refresh his recollection in regard to matters contained in his testimony.

**5. Criminal Law § 87—**

Indictments charging several defendants with committing the same offense based upon a single occurrence are properly consolidated for trial.

APPEALS by the defendants from *Burgwyn, E.J.*, at the 11 April 1966 Criminal Session of JOHNSTON.

These defendants, and two others, Ulice Perry and Vernon Smith, were charged in separate indictments, proper in form, with the offense of robbery with the use of firearms. All indictments relate to the same occurrence. It is charged by the State, as to each defendant, that on 22 February 1966, with the use of a sawed-off shotgun whereby the life of Eldridge Narron was endangered and threatened, he feloniously took and carried away from the place of business of Farmers Paradise money in the approximate amount of $100.

Each defendant entered a plea of not guilty. At the close of the State's evidence, Perry changed his plea to *nolo contendere.* Over the objection of Toyer, the four cases were consolidated for trial. The jury found each defendant "guilty as charged." Carter was sentenced to imprisonment for a term of 20 to 25 years. Toyer was sentenced to imprisonment for a term of 15 to 25 years. Carter and Toyer appealed. Perry and Smith did not.

Each defendant filed a separate appeal and a separate record. Some evidence set forth in the record filed by Toyer does not appear in that filed by Carter and vice versa. Their assignments of error are not identical. Nevertheless, a question which is determinative of each appeal is common to both and no useful purpose will be served by separate discussions of the cases. For a clearer presentation of the material facts, use has been made of both records.

Wilbert Eldridge Narron testified for the State to the effect that at approximately 9:40 p.m. on 22 February 1966, he was working as a clerk in the store known as Farmers Paradise. At that time three colored men entered the store. One of these was Ulice Perry. Another was Carter. The witness was not able to identify the third man. Perry pointed a sawed-off shotgun at Narron, who was ordered to proceed to the back of the store and lie down. Then Carter took the gun. The men tied up Narron with a clothesline cord and compelled him to tell them how to open the cash register. They opened it, removed the contents, and fled.

Deputy Sheriff Moore testified that on 2 March 1966 he stopped an automobile driven by Perry, in which Toyer, Carter and Smith were passengers. They were all arrested. A sawed-off shotgun, identified by Narron as the one pointed at him in the course of the robbery, several lengths of cord similar to that used to tie up Narron, and numerous Maryland license plates were found in the car. Toyer carried a pistol in his pocket.

While these men were in custody, they were interrogated by Robert D. Emerson, Special Agent of the North Carolina State

Bureau of Investigation. Emerson was called as a witness for the State and testified, over objection by each of the appellants, to conversations had by him with each defendant separately, in which each defendant confessed to participation in the robbery, Perry's statement being that he was the driver of the automobile used in the robbery.

Before Emerson testified as to the statement made to him by Perry, this being the first statement mentioned, the solicitor, in the presence of the jury, asked the witness whether he warned Perry of his constitutional rights. Thereupon, the attorney for Carter, stated, "I think the court ought to inquire into this in the absence of the jury, your Honor," to which the judge replied, "No, I think not; go ahead." The inquiry then proceeded and, in the presence of the jury, the witness testified concerning the warnings given by him to the defendants Perry and Carter and as to the statement made to the witness by each of them. This was over the objection of all of the defendants.

Emerson then testified, in the presence of the jury, as to the warnings given by him to Toyer concerning his constitutional rights with reference to interrogation. Thereafter, the jury was excused from the courtroom and, in the absence of the jury, Toyer's counsel cross examined Emerson with reference to the procedure followed by him in his interrogation of Toyer. At the conclusion of this cross examination, Toyer moved to suppress the testimony of Emerson, which motion was denied.

The jury was then recalled to the courtroom and the court made the following statement, in the presence of the jury:

> "The court finds as a fact that the defendant Toyer made the alleged statements made by him to the officer freely and voluntarily without coercion or intimidation or without holding out any promise of leniency, and that his waiver of counsel as testified to was made freely and voluntarily and was made intelligently. That applies to each of the other defendants about whom Mr. Emerson has testified."

The jury was then again excused from the courtroom and the court conducted, in the absence of the jury, an inquiry into the interrogation procedure used by Emerson with reference to the fourth defendant, Smith. In the absence of the jury, the court made appropriate findings with reference to this procedure and overruled the objection to the introduction of testimony by Emerson concerning the statement of Smith.

The jury was then returned to the courtroom and the court made the following statement to the jury:

"Ladies and Gentlemen of the jury, a few minutes ago the court inadvertently made a statement with respect to having found the alleged statements made by the four defendants to the officers, including the S.B.I. Agent, Mr. Emerson, to have been voluntary statements. *I charge you now you will not consider that statement made by the court in any way whatsoever, either for the State or against the defendants or any of them.*" (Emphasis added.)

As Emerson testified concerning the statement made to him by each defendant, the court instructed the jury that such statement was received, and was to be considered by the jury, as evidence against the defendant making the statement and not as against any of the codefendants.

At the close of the State's evidence, the defendant Perry, having changed his plea to *"nolo contendere,"* took the stand in his own behalf and testified that he drove the automobile in which the four defendants rode to the Farmers Paradise store and in which they fled from it on the night of the robbery. He testified that he remained in the automobile while the other three defendants went into the store. After they came out and told him they had robbed the store, they all drove away together and divided the money.

*Attorney General Bruton and Assistant Attorney General Millard R. Rich, Jr., for the State in Case No. 579.*

*Albert A. Corbett for defendant appellant Carter.*

*Attorney General Bruton and Assistant Attorney General Bullock for the State in Case No. 580.*

*Spence & Mast for defendant appellant Toyer.*

LAKE, J. Prior to his testimony with reference to the statement made to him by each defendant, the witness Emerson testified concerning his interrogation procedure and the warnings given by him to that defendant concerning his rights. As to each defendant, he testified that he first identified himself as a special agent with the State Bureau of Investigation, and then told the defendant that he did not have to answer any question or make any statement whatsoever, that anything he did say could be used against him in a court, that he was entitled to a lawyer at any time he so desired and had the right to have an attorney of his own choice present before he answered 'any question. There is nothing in the record of either appeal to suggest any force, threat, intimidation, promise or hope of reward inducing any of these statements. No defendant testified concerning his interrogation by Emerson or any other officer.

There is, therefore, nothing in the record on either appeal to suggest that any of these statements was incompetent evidence, *per se,* *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1. This trial having occurred prior to the decision in *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. ed. 2d 694, the statements by Mr. Emerson to the respective defendants, concerning their constitutional rights, complied with the applicable interpretation by the Supreme Court of the United States of the Fourteenth Amendment to the Constitution of the United States.

There was, however, error in conducting the preliminary inquiry, concerning the statement by Carter, in the presence of the jury, and there was also error in the court's announcement, in the presence of the jury of its findings with reference to the statements of the several defendants. The defendants having objected to evidence concerning the alleged confessions, and having requested the court to make inquiry in the absence of the jury concerning the admissibility of these statements, the court should have sent the jury out and, in its absence, inquired into the circumstances under which the statements were given, so as to determine whether or not they were voluntary. Upon such inquiry, the court should have made its findings of fact, concerning the admissibility of the proposed testimony relating to the alleged confessions, in the absence of the jury. *State v. Barber,* 268 N.C. 509, 151 S.E. 2d 51; *State v. Gray, supra; State v. Walker,* 266 N.C. 269, 145 S.E. 2d 833; *State v. Barnes,* 264 N.C. 517, 142 S.E. 2d 344.

The finding by the court, in the presence of the jury, that a statement, said to have been made by the defendant, was made voluntarily is the expression of an opinion by the court that the statement was made. See *State v. Walker, supra.* Whether the statement was or was not made is a question for the jury. *State v. Gray, supra.* The expression by the court in the presence of the jury of an opinion concerning a fact to be found by the jury is forbidden by G.S. 1-180.

The learned trial judge, having slipped inadvertently into this error in announcing, in the presence of the jury, his finding that the statements by the four defendants were voluntary, sought to correct the error, and to remove its prejudicial effect, by instructing the jury that the statement had been made by him inadvertently and that they were not to consider it. This Court has said, however, many times that once the trial judge has given, in the presence of the jury, the slightest intimation, directly or indirectly, of his opinion concerning a fact to be found by the jury or concerning the credibility of testimony given by a witness, such error can not be corrected by instructing the jury not to consider the expression by the

court. *State v. Canipe*, 240 N.C. 60, 81 S.E. 2d 173; *State v. Bryant*, 189 N.C. 112, 126 S.E. 107; *Morris v. Kramer*, 182 N.C. 87, 108 S.E. 381; *State v. Cook*, 162 N.C. 586, 77 S.E. 759; *State v. Dick*, 60 N.C. 440. As Ervin, J., speaking for the Court, said in *State v. Canipe*, *supra*:

> "The judge occupies an exalted station, and jurors entertain a profound respect for his opinion. [Citation.] As a consequence, the judge prejudices a party or his cause in the minds of the trial jurors whenever he violates the statute by expressing an adverse opinion on the facts. When this occurs, it is virtually impossible for the judge to remove the prejudicial impression from the minds of the trial jurors by anything which he may afterwards say to them by way of atonement or explanation."

This is especially true where, as here, the presiding judge is one who is well known throughout the State, and so presumably to the jurors, as a result of a long career of distinguished service upon the Bench.

This inadvertent expression of the opinion that the witness for the State had correctly recounted statements made to him by the defendants was prejudicial to both of the appellants, and each of them must, on this account, be granted a new trial.

During his testimony, Mr. Emerson referred to notes of his conversations with the defendants for the purpose of refreshing his recollection. Counsel for Toyer, in the course of his cross examination of this witness, requested permission to examine these notes. Upon objection by the State, the court refused him permission to examine them. This was error as to the defendant Toyer. Stansbury, North Carolina Evidence, § 32.

There was no error in the consolidation of the four cases for trial. *State v. Bryant*, 250 N.C. 113, 108 S.E. 2d 128. However, for the reasons above mentioned, each of these appellants is entitled to a new trial.

As to the Defendant Carter, Case No. 579, New trial.

As to the Defendant Toyer, Case No. 580, New trial.