SUSAN WALKER GUSTAFSON v. BRUCE A. GUSTAFSON.

(Filed 12 January, 1968.)

**1. Divorce and Alimony § 22—**

An order awarding custody of the children is not final but is subject to modification upon change of condition.

**2. Same—**

The use of affidavits by the wife in a hearing to award the custody of the children does not deprive the defendant of a fair hearing, since at the trial of the cause the defendant will be afforded the right to cross-examine the witnesses.

**3. Same;  Evidence § 14—**

The provisions of G.S. 8-53 authorizing "the presiding judge of a superior court" to compel a physician to disclose confidential matters is limited to a judge presiding at the trial and does not authorize a judge in a hearing pursuant to G.S. 50-16 to compel the examination of a physician who submitted affidavits in support of the wife.

**4. Evidence § 14;  Constitutional Law § 31—**

A medical witness for plaintiff in a custody hearing brought notes relating to his treatment of the wife for mental disability but he did not

refer to them during the examination to refresh his memory. *Held:* There was no error in denying defendant's motion that he be allowed to inspect the notes, and further, the notes being in the nature of a privileged communication, the court will not compel the person within the privileged relation to produce them.

**5. Divorce and Alimony § 22—**

The resident judge or the presiding judge of a district has the authority to award the custody of a child.

BOBBITT, J., concurring.

APPEAL by defendant from *Mintz, J.,* July 22-24, 1967 (Order dated July 24, 1967), NEW HANOVER Superior Court.

On 4 January 1967 plaintiff brought an action against her husband under G.S. 50-16 in which she sought the custody of their daughter and support and counsel fees. A complaint was filed at that time, and later on 5 May 1967, in accordance with a written stipulation, she filed an amended complaint. It alleged that the parties were married to each other on 29 June 1957 and that their child, Frances Holbrook Gustafson, was born 23 May 1962; that at the time of their marriage the defendant was a lieutenant in the U. S. Marine Corps stationed at Quantico, Virginia; that the following year he obtained his discharge from the Marine Corps and then resumed his studies at the University of North Carolina, preparing himself to practice Orthodontics; that because the defendant was unable to finance his education that her family assisted them financially and that she sold stock owned by her, worth $3695.69, for that purpose; that she worked while they lived in Chapel Hill in order to help the family financial condition; that in 1964 they moved to Winston-Salem where the defendant established his practice as an orthodontist and is now earning in excess of $35,000.00 a year.

She alleged that all during their marriage the defendant had neglected, abused and mistreated her, all of which resulted in a deterioration of her health; that his constant cruel criticism and ridicule caused her to become emotionally and acutely depressed; that her life became burdensome and intolerable and that as a result she was admitted to the Institute of Living at Hartford, Connecticut on 17 November 1964 where she remained until December 1966. In January 1966 her condition had improved and she was looking forward to being discharged when the defendant telephoned her that he had decided they should go their separate ways and that she should resume her teaching and support herself.

In March he wrote the Institute of Living that he would no longer be responsible for her treatment and from that date refused to pay for her hospitalization. This action caused her condition to

worsen and as a result she was compelled to spend approximately twelve months more in the hospital.

She alleged that she had at all times been a dutiful and loyal wife and that the mistreatment accorded her by her husband was without provocation on her part and was solely due to his cruel and barbarous treatment, which caused her humiliation, embarrassment and serious impairment to her health. She further alleged that upon her discharge from the hospital she went to her parents' home in Wilmington, N. C. at which time the defendant delivered her clothes to her but refused to furnish any money for support, though she requested it on many occasions.

She alleged that their daughter stayed with her husband while she was in the hospital and that he had asserted that he intended to keep her under his exclusive control and custody. She prayed that she be awarded the custody of their daughter and that the defendant be required to provide support for her and the child and pay counsel fees.

Upon the filing of the original complaint, the defendant moved for a change of venue to Forsyth County upon the grounds that the convenience of witnesses and the ends of justice would be promoted and set forth in some detail the basis for this motion. It was denied.

The defendant then made a motion to strike many sections of the complaint which resulted in a stipulation that the plaintiff might file the amended complaint which has been summarized above. The defendant then obtained an order for the adverse examination of the plaintiff in order to prepare his answer, pursuant to which she was examined at great length. The record of this examination requires one hundred thirteen pages of the case on appeal.

After some continuances, a hearing on the plaintiff's motion for a temporary order was held before Judge Mintz at Wilmington on 24 July 1967. The plaintiff offered evidence in support of her allegations and testified that she was now fully recovered from her disability. The defendant through the adverse examination of the plaintiff, which in effect was a cross examination, elicited evidence tending to refute the plaintiff's position under the present condition of this litigation. The hearing resulted in an order *pendente lite* which awarded the primary custody of the child to the plaintiff but permitted the defendant to have her visit him on frequent occasions. The order further provided that he should pay counsel fees, but made no award for the support of the plaintiff and her child, with the provision that she could make application therefor upon proper notice. From this order the defendant appealed, assigning as error (1) the use of affidavits upon the hearing and the denial to the defendant of the right of cross examination of the affiants; (2) the

denial of his motion to take the deposition of physicians who had treated the plaintiff; (3) the authority of the resident judge, sitting in chambers, to determine the custody of the child; and (4) the refusal of the Court to permit defendant's attorneys to see the notes of one of the plaintiff's witnesses.

The evidence at the hearing will be further summarized and the legal positions of the parties considered in the opinion.

*Hudson, Ferrell, Petree, Stockton, Stockton and Robinson by Dudley Humphrey and W. G. Smith, attorneys for defendant appellant.*

*Burney & Burney by John J. Burney, Jr.; Marshall & Williams by Alan A. Marshall, attorneys for plaintiff appellee.*

PLESS, J. The order of Judge Mintz relates only to the custody of the little girl, and as is said in *In Re Marlowe,* 268 N.C. 197, 150 S.E. 2d 204, "the control and custody of minor children cannot be determined finally. Changed conditions will always justify inquiry by the courts in the interest and welfare of the children, and decrees may be entered as often as the facts justify." From its very nature the order is temporary, and the exception of the defendant to the use of *ex parte* affidavits is not well taken. He insists that he should be permitted to cross examine the makers of the affidavits which were presented by the plaintiff. This was denied in the discretion of the Court, and in this ruling there was no abuse. Affidavits may be prepared by the attorneys in advance, with some regard for the convenience of the witnesses, and thereby a written record is provided. Should we accept the contentions of the defendant and forbid the use of affidavits and require the presence, examination and cross examination of each of the witnesses at preliminary and temporary hearings and motions pending trial, it would cause serious and unnecessary delay. The ultimate right of cross examination will be afforded the parties at the trial of the cause, and this is within the purview of the Court's decision in *Stanback v. Stanback,* 266 N.C. 72, 145 S.E. 2d 332 and 270 N.C. 497, 155 S.E. 2d 221. We have examined the authorities cited by the defendant in support of his position but find none of them applicable under the conditions of the hearing before Judge Mintz.

The defendant contends that he is entitled to examine the physicians that treated the plaintiff for the illness she alleges in her complaint to have been caused by his conduct. The plaintiff invokes G.S. 8-53 which provides that the relationship between physician and patient is confidential and that under it a physician shall not be

required to disclose any information he acquired in attending a patient which was necessary to enable him to prescribe for the patient. It further provides "the presiding judge of a superior court may compel such disclosure, if in his opinion the same is necessary to a proper administration of justice." Remembering that Judge Mintz was not "a presiding judge" in that the proceedings did not constitute a trial but merely an inquiry to determine the temporary custody of the child, we are of the opinion that he was not authorized under the proviso quoted above to compel the disclosures sought by the defendant. In fact, the defendant's contention is decided adversely to him in *Yow v. Pittman,* 241 N.C. 69, 84 S.E. 2d 297. In that case the defendant sought an order to take the deposition of a doctor, and upon a hearing before the resident judge at chambers, the application was denied. In affirming this action, Higgins, J., speaking for the Court, said:

> "The statute contemplates a Superior Court in term. As stated in the cases cited, the presiding judge must enter his findings upon the record. This he can do only in term and after hearing. While Judge Rudisill was a Judge of the Superior Court, he was not at the time *the presiding judge of a Superior Court in term.* He had no authority to enter the requested order in Chambers."

In her complaint Mrs. Gustafson made no allegations concerning the treatment given her by any physician. True it is that the defendant adversely examined her and in her testimony she answered the questions of defendant's attorneys with regard to the names of the physicians and the dates and nature of treatment prescribed by each of them. As a result of the information thus elicited by the plaintiff's involuntary appearance for examination, he now seeks to obtain the evidence of the physicians named. The plaintiff through her attorneys has notified the physicians that they have not been released from the confidential character of their association with Mrs. Gustafson and have been forbidden to disclose information gained in that manner; and since no "presiding judge" has found that "the same is necessary to a proper administration of justice," we are of the opinion that the rule stated in *Lockwood v. McCaskill,* 261 N.C. 754, 136 S.E. 2d 67, is applicable:

> "In our view, the proviso in G.S. 8-53 does not authorize a superior court judge, based on the circumstance that he is then presiding in the county in which the action is pending, to strike down the statutory privilege in respect of any and all matters concerning which the physician might be asked at a deposition

hearing. Doubtless, in practically all personal injury actions the defendant would deem it advisable, if permitted to do so, to examine before a commissioner or notary public in advance of the trial the physician(s) of the injured party to 'evaluate the case' and 'to prepare his defense.' Obviously, if this course were permitted, the privilege created by the statute would be substantially nullified. This practice, if considered desirable, should be accomplished by amendment or repeal of the statute."

It must be recalled that at the trial of the case affidavits will not be admissible and that the witnesses must appear in person. Therefore the fact that in this hearing for a *temporary* purpose the plaintiff used the affidavits of physicians who treated her does not bring into play the proviso of G.S. 8-53.

The defendant further excepts to the failure of Judge Mintz to allow him to inspect the "notes that were relied upon by a witness during his testimony," citing *State v. Carter,* 268 N.C. 648, 151 S.E. 2d 602. However, the facts of that case are quite distinguishable from the situation here. The defendant called Dr. R. H. Fisscher as a witness in his behalf. He testified that he saw Mrs. Gustafson on two occasions and that he took notes relating to them. He stated that he had the notes with him in response to the subpœna served upon him at the behest of the defendant. The defendant then asked that he be permitted to see the notes. Upon inquiry it appeared that the doctor was not using the notes at the time of his examination, although they were in the possession of someone else in the courtroom. Had the doctor been refreshing his memory from the use of his notes as he testified, *State v. Carter, supra,* might be applicable; but the very fact that he had notes somewhere under his control would not require that the defendant be allowed to inspect them. Also, the privileged communication rule extends to writing as well as to oral testimony; and when a paper is of a privileged character and in the hands of a person within the privileged relation, the Court will not compel him to produce the paper. 58 Am. Jur., Witnesses, § 366.

Again emphasizing that all custody orders are temporary in that they are founded upon conditions existing at the time of the hearing, we can see no validity in the defendant's claim that a resident judge in chambers does not have authority to determine custody of a child. There may be seven or eight months between terms in our less populated counties. The welfare and custody of a little child is an urgent matter in which substantial harm can be caused by delay. There is nothing about such proceeding that requires term-time consideration. A jury is not needed — the judge alone decides the question of cus-

tody. Further, both G.S. 50-13 and G.S. 50-16, relating to custody, refer to "the resident or presiding judge of the district," and G.S. 7-65 gives the resident judge and the presiding judge of the district "concurrent jurisdiction in all matters and proceedings where the superior court has jurisdiction out of term" and provides further that in all matters and proceedings not requiring the intervention of a jury, the resident judge shall have concurrent jurisdiction with the presiding judge of the district.

From the record it appears that both the plaintiff and the defendant are of good character and that the court could well have adjudged that both were fit and suitable persons to have the custody of this child. In view of the exceptions taken, we find it unnecessary to further discuss the evidence offered before Judge Mintz. In a three-day hearing he observed both parents, heard their evidence, noted their demeanor and attitude and thereupon made his order.

When the case comes on for trial and the jury has answered the issues within its province, it is to be assumed that the presiding judge will then make further orders respecting the custody of this little girl, although the verdict will not necessarily govern those orders. It is to be hoped that the "polar star" will control the destiny of this unhappy ship of marriage and result in the innocent child coming into a safe and secure harbor.

In the order below we find

No error.

BOBBITT, J., concurring: In my view, G.S. 8-53 confers upon a superior court judge discretionary authority to compel a doctor to disclose the confidential information referred to therein only in a trial or hearing conducted by such superior court judge. Hence, I agree Judge Mintz had no authority to order such disclosure by a doctor at a deposition hearing. I reserve the question, not presented for decision on this appeal, as to whether a superior court judge, when conducting a custody hearing, either at term or in chambers, is a presiding judge within the meaning of G.S. 8-53. In such case, the superior court judge has sole responsibility and authority for decision. Subject to this reservation, I concur.