STATE OF NORTH CAROLINA v. JOHN VAN CROSS

No. 3

(Filed 11 October 1977)

**1. Criminal Law § 98.2— sequestration of witnesses—discretionary matter**

It is the general practice in N.C. in both civil and criminal cases to separate the witnesses and send them out of the hearing of the court when requested, but this is discretionary with the trial judge and may not be claimed as a matter of right.

**2. Criminal Law § 101.4— sequestration of jury—denial proper**

The trial court did not abuse its discretion in denying defendant's motion to sequester the jury where defendant argued that the courtroom facilities were crowded, the trial was heavily publicized, and the potential was great for jurors to come in contact with outside sources, but there was no suggestion of any impropriety on the part of any juror.

**3. Criminal Law § 87.3— written statement to refresh recollection— examination by defendant not required**

Where a witness admitted that he used a written statement to refresh his recollection while at home prior to trial but left the statement at home, the trial court did not err in not requiring the State to produce the statement so that defendant could view it.

**4. Criminal Law 66.3— composite sketch—identification from sketch—admission error**

Although it was error to allow a witness to express her past opinion as to the identity of the individual depicted in sketches which were based on descriptions given by eyewitnesses to a shooting when the sketches themselves were not introduced into evidence, such error was harmless in view of the overwhelming evidence of defendant's guilt.

**5. Bills of Discovery § 6— discovery of exculpatory evidence—photographs withheld —no order to produce—no error**

Where the request for discovery made by defendant's attorney prior to trial asked the district attorney to disclose any exculpatory evidence in the possession of the State, the State provided no information about a photographic identification procedure in which nine people failed to identify a photograph of defendant, and defendant learned about the procedure during cross-examination of a witness, the trial court did not err in not requiring the State to produce the photographs used, since the desired information concerning the photographs was fully disclosed to defendant by stipulation; defendant did not request additional information, a continuance, a recess or other action at the time; and the record did not show that the photographs should or could have been provided to defendant since they were never requested.

**6. Homicide § 21.5; Robbery § 4— first degree murder—armed robbery—sufficiency of evidence**

In a prosecution for armed robbery and first degree murder, evidence was sufficient to be submitted to the jury where it tended to show that witnesses identified defendant as the man they saw shoot a supermarket cashier with a pistol and take money from the cash register; other witnesses testified concerning conversations with defendant about the robbery; doctors testified that the victim died as the result of a gunshot wound inflicted on this occasion; and the operator of the supermarket testified that $830 was taken from the cash register.

**7. Criminal Law § 98— possibility of jury viewing defendant in handcuffs—no new trial**

Defendant was not entitled to a new trial where he was required to wait in a holding area with handcuffs on, and there was a possibility that he might have been seen by the jury in handcuffs, but there was no showing that the jury in fact saw him so bound.

APPEAL by defendant from *Clark, J.*, at the 18 October 1976 Criminal Session of CUMBERLAND Superior Court.

Upon an indictment, proper in form, defendant was tried and convicted of first degree murder and armed robbery. He was

sentenced to life imprisonment on the murder charge. Judgment was arrested on the armed robbery charge.

The State's evidence tends to show the facts as follows: On the evening of 1 November 1975, at approximately 8:00 p.m., a black male, later identified as defendant, entered the V-Point Supermarket on Murchison Road in Fayetteville, North Carolina. He was wearing a blue denim jacket, dark pants and a red toboggan cap covering his head but not his face. Upon entry, the man immediately walked up to the check-out counter and took his place in line. Approximately ten to twelve customers were present in the store at the time, and several of them observed the man enter the store and take his place in line.

William Victor Tally, the son of the storeowner, was operating the cash register at the middle check-out line. The black male approached Tally, said the word "Robbery," and immediately pulled a pistol from the left side of his coat and shot Tally in the chest. Tally fell back to a rack and slid to the floor. The assailant grabbed a handful of money from the opened cash register drawer and ran out the front door, dropping money as he ran. He ran through the parking area and across Murchison Road into a wooded area. Several witnesses observed the assailant grab money from the cash register and rush out the door.

William Victor Tally was rushed to Cape Fear Valley Hospital where he was pronounced dead on arrival. A subsequent autopsy revealed that the bullet which caused his death had entered his abdominal region, heart and lungs.

That same evening two black males, eyewitnesses to the crime, went to the Law Enforcement Center in Cumberland County and gave a description to police from which artist sketches were drawn. Ruth Cartrette, a witness who was acquainted with defendant but who was not present at the crime, later told police that the sketches looked like the defendant.

Witnesses for both the State and the defense testified that John Van Cross was present in Fayetteville on 1 November 1975. On 3 November 1975, the defendant appeared in district court to have a marijuana charge against him continued. On the same day, defendant, and State's witnesses Ronnie Crumpler and Jonathan Robinson, left Fayetteville in Crumpler's 1971 gold Cadillac automobile, and traveled to defendant's home in Birmingham, Alabama. They remained at this location for approximately ten days to two weeks, and then traveled to Miami, Florida. Witnesses Crumpler and

Robinson testified that upon hearing that the three of them were wanted for the Fayetteville robbery and murder, defendant told them that he had done it. Both witnesses admitted that they had discussed robbing the store with defendant in October 1975.

Around 1 December 1975, defendant flew back to his home in Birmingham, and remained there until the day of his arrest, 17 January 1976. He voluntarily waived extradition and traveled back to Fayetteville with police.

Defendant testified in his own behalf. He denied committing the robbery and murder and denied any participation in the crime. He further testified that he first heard of this matter in late November 1975 in Miami, when Crumpler told him that police were looking for them in connection with the crime. Several witnesses testified that State's witness Jonathan Robinson told them that defendant had not committed the robbery and murder, but that he (Robinson) was responsible for the acts.

Other facts pertinent to the decision are set forth in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Elisha H. Bunting, Jr. for the State.*

*Charles H. Burgardt for defendant appellant.*

MOORE, Justice.

Defendant moved to sequester the State's witnesses prior to presentation of the evidence. The motion was overruled, and defendant assigns this as error, contending that the denial of the motion was an abuse of the trial judge's discretion. The record does not disclose any reason given by defendant for this motion. In his brief, defendant argues that this motion was crucial to his defense in order to show inconsistencies in the testimony of Ronnie Crumpler and Jonathan Robinson as well as certain eyewitnesses' testimony concerning the identification of defendant. The State called twenty-one witnesses during the trial, but of these defendant named only Crumpler and Robinson. Defendant had copies of the written statements made to the officers by these two witnesses, and he had the opportunity to, and did, thoroughly cross-examine each of them.

[1] It is the general practice in North Carolina in both civil and criminal cases to separate the witnesses and send them out of the hearing of the court when requested, but this is discretionary with the trial judge and may not be claimed as a matter of right. "A

judge's refusal to sequester the State's witnesses is not reviewable unless an abuse of discretion is shown." *State v. Sparrow*, 276 N.C. 499, 511, 173 S.E. 2d 897, 905 (1970); *State v. Barrow*, 276 N.C. 381, 172 S.E. 2d 512 (1970); *State v. Tatum*, 291 N.C. 73, 229 S.E. 2d 562 (1976); 1 Stansbury, North Carolina Evidence § 20 (Brandis rev. 1973). The record fails to show any prejudice to defendant or abuse of discretion by the trial judge. This assignment is overruled.

[2]   Next, defendant assigns as error the failure of the trial judge to sequester the jury during the trial. The record indicates that some argument took place, but does not state what grounds defendant presented to support this motion. Defendant argues that the courtroom facilities were crowded, the trial was heavily publicized, and the potential was great for jurors to come in contact with outside sources. Nothing in the record indicates or even suggests any impropriety on the part of any juror. Sequestration is a discretionary matter for the trial judge, and here no abuse of discretion appears. *State v. Harding*, 291 N.C. 223, 230 S.E. 2d 397 (1976); *State v. Bynum* and *State v. Coley*, 282 N.C. 552, 193 S.E. 2d 725 (1973). This assignment is without merit and is overruled.

[3]   By Assignments of Error Nos. 3 and 5, defendant insists that the trial judge erred in not requiring the State to produce the written statement made by witness Michael Anthony Dunham after he had referred to it while testifying. Defendant argues that this was a writing the witness used to refresh his recollection and that he was entitled to view it. With reference to writings used by a witness to refresh his memory, 1 Stansbury, North Carolina Evidence § 32, p. 88 (Brandis rev. 1973), states:

> "The witness may refresh his memory before the trial, in which case he need not produce in court the writings used for that purpose. If the writings are in court, however, or the witness attempts to use them while testifying, the opposite party is entitled to their production for inspection."

In present case, the witness admitted that he used the statement to refresh his recollection while at home prior to trial. The statement was not used to refresh his recollection while he was on the stand. In fact, the statement had been left at the witness's home. In the case cited by defendant, *State v. Carter*, 268 N.C. 648, 151 S.E. 2d 602 (1966), the witness did refer to his notes to refresh his recollection while testifying, and this Court held it was error for the trial judge to refuse defense counsel the right to view the notes. *Carter* is not on point with the case before us. The record in the case

at bar clearly shows that the witness Dunham did not refer to the statement while testifying, but that this statement was at his home. This case is quite similar to the case of *Gustafson v. Gustafson*, 272 N.C. 452, 457, 158 S.E. 2d 619, 623 (1968), in which Justice Pless stated:

> "The defendant further excepts to the failure of Judge Mintz to allow him to inspect the 'notes that were relied upon by a witness during his testimony,' citing *State v. Carter*, 268 N.C. 648, 151 S.E. 2d 602. However, the facts of that case are quite distinguishable from the situation here. The defendant called Dr. R. H. Fisscher as a witness in his behalf. He testified that he saw Mrs. Gustafson on two occasions and that he took notes relating to them. . . . Upon inquiry it appeared that the doctor was not using the notes at the time of his examination, although they were in the possession of someone else in the courtroom. Had the doctor been refreshing his memory from the use of his notes as he testified, *State v. Carter, supra*, might be applicable; but the very fact that he had notes somewhere under his control would not require that the defendant be allowed to inspect them. . . ."

These assignments are overruled.

[4] State's witness Mrs. Bobbie Joyner testified that immediately after the crime she made two sketches of an individual based on descriptions given her by two eyewitnesses. State's witness Ruth Cartrette, not present at the crime, testified that in November or December of 1975 officers showed her these sketches, and she told the officers that the individual depicted looked like the defendant. She said she had known the defendant for about one year.

Although the two sketches were properly authenticated, marked as State's Exhibits Nos. 11 and 12, and were shown to State's witnesses Joyner and Cartrette, they were not introduced into evidence. Defendant argues that the testimony of Ms. Cartrette should not have been admitted for the reason that it was irrelevant, immaterial and prejudicial.

Concerning composite pictures and sketches based on an eyewitness's description and prepared for investigatory purposes, *State v. Montgomery*, 291 N.C. 91, 100, 229 S.E. 2d 572, 578 (1976), says:

> ". . . At this stage, none of these witnesses knew the defendant and nothing in the record indicates that he was then

suspected by the artist or any other police officer. The purpose of this picture was not to convict the defendant but to describe the offender. It was merely a recording of the image of the offender then fresh in the minds of each of these witnesses. Clearly, there was nothing improper in this portion of the out-of-court identification, or in the admission of the photograph of the composite in evidence."

Since the sketches were not introduced into evidence in the present case, admission of Ms. Cartrette's testimony was error. Her testimony amounts to a report of her past opinion as to the identity of the individual depicted in the sketch. Thus, her testimony is lay opinion concerning a matter within the province of the jury. Opinion testimony is inadmissible whenever a witness can relate the facts so that the jury will have an adequate understanding of them, and the jury is as well qualified as the witness to draw inferences and conclusions from the facts so related. 1 Stansbury, North Carolina Evidence § 124, p. 388 (Brandis rev. 1973); *State v. Patterson*, 288 N.C. 553, 220 S.E. 2d 600 (1975); *State v. Lindley*, 286 N.C. 255, 210 S.E. 2d 207 (1974). Here, the jury could have gained an understanding of the facts by simply viewing the sketches. And, the jury was as well qualified as the witness to determine whether the sketches resembled the defendant.

Although it was error to allow Ms. Cartrette to express her opinion when the sketches were not presented to the jury, we believe that under the facts of this case the error was harmless. Defendant's attorneys had the opportunity to see the sketches and to examine the witness concerning them. The evidence of defendant's guilt was overwhelming. The admission of evidence which is technically incompetent will be treated as harmless unless it is made to appear that defendant was prejudiced thereby and that a different result likely would have ensued had the evidence been excluded. In light of such overwhelming evidence of guilt, there is no reason to believe that another trial would produce a different result in this case. *State v. Cousin*, 291 N.C. 413, 230 S.E. 2d 518 (1976); *State v. Hudson*, 281 N.C. 100, 187 S.E. 2d 756 (1972); *State v. Williams*, 275 N.C. 77, 165 S.E. 2d 481 (1969). This assignment is overruled.

During the testimony of Ronnie Crumpler, defense counsel moved to have two witnesses, Jonathan Robinson and Brenda Wolfe, sequestered. He contends the trial court abused its discretion by denying that motion. Both of those witnesses had made prior written statements and defendant had copies of these statements.

At the time of the motion, both witnesses had heard the testimony of Crumpler for approximately an hour and a half. This was the complete direct examination of this witness. If the testimony of Crumpler in the presence of Robinson and Wolfe was prejudicial, it could not be erased by sequestering the witnesses at the time this motion was made. As previously stated, a motion to sequester witnesses is addressed to the discretion of the trial court and the court's refusal of the motion will not be disturbed in the absence of a showing of abuse. *State v. Sparrow, supra; State v. Barrow, supra; State v. Tatum, supra.* Defendant has failed to show either prejudice or abuse of discretion in the denial of his motion. This assignment is overruled.

[5]  In the request for discovery made by defendant's attorney prior to trial, the district attorney was asked:

> "You are further requested to provide me with any exculpatory evidence in the possession of the State. This will include:
>
> a) The names and addresses of any witnesses to a lineup which was held for the purpose of identification of the defendant, who failed to identify the defendant, or who identified some other person."

The district attorney responded:

> "The following information concerning the lineup is provided:
>
> (a) Benjamin McCoy identified another person in the lineup.
>
> (b) Richard Bradford failed to identify anyone in lineup; Michael Dunham indicated to officers outside the lineup that it was #7 — Van Cross — but said he was scared in the lineup itself. Andrew McLaughlin failed to identify anybody for sure. John McLaughlin failed to recognize anyone. Bernard Heyward failed to recognize anyone."

During trial, on cross-examination of Rufus Jenkins McClaurin, defendant learned that the witness had been shown some photographs in 1975 but could not identify the defendant from them. Defendant now argues that the trial court should have required the State to produce the photographs used and that the failure to do so was prejudicial error. The photographs were shown to nine witnesses in November 1975, immediately after the offense in ques-

tion, and two months before defendant was arrested. There is nothing to show that the photographs existed when discovery was made or that they were in the custody or control of the State. In addition, these photographs had never been requested by defendant even though defendant did request the names of persons who had viewed a lineup. When defendant learned of the pictorial lineup, he did not object, move for a mistrial, or in any manner bring this to the attention of the trial judge. Instead, when the State rested its case, he moved for nonsuit on other grounds. Defendant then agreed to a stipulation dated 27 October 1976 that nine named persons were shown six photographs in November 1975 and that none of these nine persons identified the defendant or anyone else. The next day defendant proceeded to introduce evidence and examine twelve witnesses. Five of the nine persons named in the stipulation testified for the State. Defendant elected not to recall any of those five witnesses for further cross-examination and elected not to call as witnesses any of the other four persons named in the stipulation. Defendant had the information that he desired as well as the opportunity to use it. He chose to use it only by means of the stipulation.

G.S. 15A-910 provides:

"(a) If at any time during the course of the proceedings the court determines that a party has failed to comply with this Article or with an order issued pursuant to this Article, the court in addition to exercising its contempt powers may

(1) Order the party to permit the discovery or inspection, or

(2) Grant a continuance or recess, or

(3) Prohibit the party from introducing evidence not disclosed, or

(4) Enter other appropriate orders."

In present case, the desired information was fully disclosed to defendant by stipulation. Defendant did not request additional information, a continuance, a recess or other action at the time. The record does not indicate that the photographs should or could have been provided to defendant since they were never requested. Under these circumstances, defendant has failed to show any prejudicial error on the part of the trial judge. This assignment is overruled.

[6] By Assignments of Error Nos. 11 and 12, defendant insists that the trial court erred in overruling his motion as of nonsuit at the

close of the State's evidence and at the close of all the evidence. Upon defendant's motion for judgment as of nonsuit in a criminal action, the question for the court is whether there is substantial evidence of each essential element of the offense charged or of a lesser offense included therein, and of the defendant's being the perpetrator of such offense. If so, the motion is properly denied. *State v. Roseman*, 279 N.C. 573, 184 S.E. 2d 289 (1971); *State v. Mason*, 279 N.C. 435, 183 S.E. 2d 661 (1971); *State v. Cooke*, 278 N.C. 288, 179 S.E. 2d 365 (1971). Motion to nonsuit in a criminal prosecution is properly denied if there is any competent evidence to support the allegations of the bill of indictment, considering the evidence in the light most favorable to the State and giving the State the benefit of every reasonable inference fairly deducible therefrom. *State v. Bell*, 285 N.C. 746, 208 S.E. 2d 506 (1974); *State v. Roberts*, 270 N.C. 655, 155 S.E. 2d 303 (1967).

Three witnesses for the State, Michael Anthony Dunham, Tanger Haywood, and Rufus Jenkins McClaurin, testified that the defendant was the man they saw shoot William Victor Tally with a pistol, take money from the cash register, and leave the V-Point Supermarket in Fayetteville, North Carolina, about 8:00 p.m. on 1 November 1975. A fourth witness, Ann Douglas Miller, identified the defendant as the man she saw at the cash register taking cash and leaving, and a fifth witness, Sabrina Lynn Thomas, testified that defendant looked like the man she saw at the cash register that night. Other witnesses testified concerning conversations with defendant about this robbery. Ronnie Crumpler testified that defendant borrowed his automobile about 7:00 p.m. on 1 November 1975 and returned it about 9:00 p.m. the same evening. Two doctors testified that William Victor Tally died as the result of a gunshot wound inflicted on this occasion. Victor Tally, who operated the V-Point Supermarket, testified that approximately $830 was taken from the cash register. This evidence is clearly sufficient to support a finding that William Victor Tally died as the result of the gunshot wound inflicted by defendant during the course of an armed robbery. The motions for nonsuit were properly denied.

Defendant next questions his arraignment, contending it was error to arraign him on the armed robbery charge after he had been arraigned on the murder charge. There is no merit to this assignment. It is stipulated in the record that defendant was arraigned in superior court on 18 October 1976 for first degree murder and felonious armed robbery. He was represented by counsel at the time and entered a plea of not guilty to both charges. There is no allega-

tion of surprise, nor is there any allegation that he did not understand the charges or his pleas. The arraignment took place before any jury selection or any evidence was presented. Defendant has shown no prejudice and no basis to preclude the action taken. *See* G.S. 15A-941.

[7] Finally, defendant alleges that he was brought into the courtroom in handcuffs in front of the jury and was required to wait in a holding area in plain view of the jury. He argues that this was prejudicial to his case, and that his motion for mistrial was improperly denied. The record does not support defendant's allegations. During argument on his motion, the court asked if defense counsel was contending that the defendant was brought into the courtroom with shackles and with prison guards. Defense counsel responded: "No, sir, but he was in the holding cell. He was wearing a black suit and a bow tie [and a white shirt]." The district attorney stated that he was not aware of any time that defendant was brought into the courtroom in any form of shackles. The record does disclose that the defendant seated himself in a holding area, but it does not show that defendant appeared in front of the jury in handcuffs. Defendant himself testified that he was presently residing in the Cumberland County Jail. Although defendant could be seen in the holding area, and assuming the possibility that he might have been seen by the jury in handcuffs, we do not think this is sufficient to require a new trial. As we said in *State v. Montgomery*, 291 N.C. 235, 252, 229 S.E. 2d 904, 913-14 (1976):

> "The record indicates that some of the jurors may have momentarily viewed defendant in handcuffs while he was being escorted from the separate jail building to the courthouse. It is common knowledge that bail is not obtainable in all capital cases and the officer having custody of a person charged with a serious and violent crime has the authority to handcuff him while escorting him in an open, public area. Indeed, it would seem that when the public safety and welfare is balanced against the due process rights of the individual in this case, such action was not only proper but preferable. Under the circumstances of this case, the trial judge correctly denied defendant's motion for a mistrial."

The case cited by defendant in support of his position, *Estelle v. Williams*, 425 U.S. 501, 48 L.Ed. 2d 126, 96 S.Ct. 1691 (1976), is not on point. There, the defendant was tried while wearing prison clothes; here, defendant was not. This assignment is overruled.

Other assignments of error have been considered and are found to be without merit.

An examination of the entire record discloses that defendant has had a fair trial, free from prejudicial error. Therefore, the verdicts and judgment must be upheld.

No error.