STATE OF NORTH CAROLINA v. DENNIS DEAN MATHIS

No. 85

(Filed 17 October 1978)

1. **Searches and Seizures § 34— automobile—rifle in plain view—subsequent warrantless search of automobile**

    A sawed-off rifle seized without a warrant from the automobile in which defendant had been riding during a high speed chase by police officers was properly admitted in a prosecution for armed robbery where the evidence tended to show that the rifle was in plain view of an officer who was standing outside the automobile looking in its open door; it was not clear from the record whether the door was left open by the fleeing occupants or whether it was pushed open by a collision with a patrol car; there was nothing in the record that remotely suggested that the collision was a subterfuge designed by the officers to get at the contents of the car; and the officers could properly search the vehicle since there was no indication that it was incapable of movement and the officers had a right to seize the vehicle and deny all access to it, a corollary of that power of seizure being the power to search.

2. **Arrest and Bail § 3.6— robbery—warrantless arrest—legality**

    An officer had probable cause to believe that a felony had been committed and that defendant had committed it and defendant's warrantless arrest was therefore legal where the officer had been informed of the robbery in question; he knew that suspects had eluded capture and escaped into woods less than a mile from the spot he was patrolling; he had been given a rough description of one of the suspects; the officer first saw defendant on a bank near a wooded area; defendant's appearance matched the description the officer had received of the robbery suspect; and defendant's appearance gave rise to a reasonable inference that he had been through a wooded area.

    Justice BRITT took no part in the consideration or decision of this case.

APPEAL by defendant from *Howell, J.*, at the 11 April 1977 "Schedule B" Session of MECKLENBURG Superior Court. Defendant was convicted of armed robbery and sentenced to life imprisonment. Docketed and argued as No. 101 at the Fall Term 1977.

*Rufus L. Edmisten, Attorney General, by Donald W. Grimes, Associate Attorney, for the State.*

*Michael S. Scofield, Grant Smithson, Attorneys for defendant appellant.*

EXUM, Justice.

Defendant's assignments of error challenge (1) the admissibility of a sawed-off rifle obtained as a result of an allegedly unconstitutional search of an automobile, and (2) the admission of testimony concerning identifications of defendant at a showup and a lineup, both of which he claims were tainted by his allegedly illegal arrest. We find no merit in either assignment and no error in the trial.

The State's evidence tended to show that Jewel H. Robbins was the owner and manager of the Bel-Air Motel in Charlotte. At about 2:00 a.m. on 29 November 1976, Mrs. Robbins answered the doorbell of the motel office and admitted two black males who inquired about a room. As Mrs. Robbins engaged them in conversation, one of the men, whom Mrs. Robbins subsequently identified as defendant, pulled out a sawed-off rifle and told her, "This is a hold up." Mrs. Robbins then set off a silent burglar alarm. She gave the two men money from her cash drawer, about $235.00. One of them said she had better come up with more money. She went with them into her bedroom behind her office where they took $40.00 from her pocketbook and tied her up. Shortly thereafter, she untied herself, got her gun, went out her front door and shot at a Volkswagen that was leaving the motel.

At about the same time, Officer B. R. Pence, responding to a dispatch he had received concerning a robbery alarm there, was approaching the Bel-Air Motel. He observed a Volkswagen with no lights on heading south on North Tryon Street near the motel, thought it looked suspicious and followed it. He decided to stop the car, turned on his blue lights and his spotlight, and, with his lights on, was able to see three black males in the car. The car did not stop, and Officer Pence pursued it for two or three miles at speeds up to 70 miles per hour. The car left North Tryon Street and then turned into Sugar Creek Road and Rolling Hills Drive, successively. At this point, the car pulled off the road into a field, and its three occupants, one of whom was later identified by Officer Pence as defendant, jumped out and ran into the woods. Officer Pence gave chase, was unable to catch any of the three, and then returned to his car.

By the time Officer Pence returned, there were 10 to 15 police cars gathered in the field in response to his call for

assistance. One of the cars had struck the Volkswagen, the passenger side door of which was standing open. It is not entirely clear from the record whether this door had been left open by the occupants or knocked open by the impact with the police car. Standing outside the car and looking in the open door, Officer Pence was able to see a sawed-off rifle, which he then seized.

Defendant was arrested around 4:15 a.m. on the morning of 29 November, about two hours after the conclusion of the chase. The arrest was made by Officer Madison M. Hunter, who was patrolling on North Tryon Street approximately one mile from the field where the chase had ended. Officer Hunter was aware of the events that had occurred earlier that evening and had received a description of the suspects. He arrested defendant when he saw him come off a bank that led to a wooded area and start walking down North Tryon Street. He then took defendant back to the field in which the automobile chase had ended, where Officer Pence identified him as one of the occupants of the Volkswagen.

Defendant testified that he was walking home from a friend's house at the time of his arrest. He said he was walking on the bank in order to avoid walking in the street. Although at one point in his testimony he placed himself on North Tryon Street at 4:20 a.m., he later stated that his arrest took place at 1:00 a.m. on the morning of 29 November. Defendant denied any involvement in the robbery of the Bel-Air Motel.

[1] Defendant's first assignment of error relates to the admission into evidence of the sawed-off rifle that Officer Pence took from the Volkswagen. In essence, defendant argues that this rifle was acquired as a result of an unreasonable search and seizure and consequently falls under the exclusionary rule of *Mapp v. Ohio*, 367 U.S. 643 (1961). We find defendant's assignment of error without merit and hold that the rifle was properly admitted into evidence.

When Officer Pence first saw the rifle, he was standing outside the Volkswagen looking in its open door. The rifle was clearly within his view. "It has long been settled that objects falling in the plain view of an officer who has a right to be in a position to have that view are subject to seizure and may be introduced into evidence." *Harriss v. United States*, 390 U.S. 234, 236 (1968);

*accord State v. Small*, 293 N.C. 646, 239 S.E. 2d 429 (1977). Defendant concedes the rifle was in Officer Pence's plain view. He contests, however, the officer's "right to be in a position to have that view." The basis of defendant's argument is that the door was open because of the collision between it and a police car. According to defendant, "Plain view in no way encompasses a situation where the police first use a patrol car as a battering ram to expose the contents inside an unoccupied vehicle."

Defendant's argument is unpersuasive. In the first place, it is not clear from the record whether the door was open because the occupants left it open or because of the collision. Officer Pence testified only that he believed the impact had pushed the door of the Volkswagen open. Assuming that the open door was a result of the collision, we still cannot accept defendant's argument. If the police had, as defendant's choice of words suggests, intentionally rammed their car into the Volkswagen for the purpose of exposing its contents, then perhaps the "plain view" doctrine would not apply. Here, however, the collision occurred in a field at the end of a 70 mile per hour chase through the city of Charlotte. There is nothing in the record that remotely suggests the collision was a subterfuge designed by the officers to get at the contents of the car. We therefore see no reason not to apply the plain view doctrine to these circumstances.

An alternative ground for upholding the seizure of the rifle, recognized by the trial judge, is that the automobile was a "fleeting target for a search." "[A] warrantless search of a vehicle capable of movement may be made by officers when they have probable cause to search and exigent circumstances make it impracticable to secure a search warrant." *State v. Allen*, 282 N.C. 503, 512, 194 S.E. 2d 9, 16 (1973). There can be no dispute here that the police had probable cause to search the vehicle. There had been a robbery, this vehicle had been observed near the scene, it had failed to stop for a police blue light and it had fled at high speed.

Defendant contends, however, that there were no exigent circumstances (1) because of the automobile's damaged condition, and (2) because of the large number of police officers in the vicinity. Replying to defendant's first argument, we think it enough to note that although the evidence tends to show the Volkswagen

was damaged, there is no indication that it was incapable of movement. In reply to his second argument, we turn to *Chambers v. Maroney*, 399 U.S. 42, 52 (1970):

> "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."

Here the officers had a right to seize the vehicle and deny all access to it. A corollary to that power of seizure under the *Chambers* language is the power to search. It is true that the United States Supreme Court rulings on vehicle searches since *Chambers* do not fall into a clear pattern. For a discussion of these cases, see *State v. Jones*, 295 N.C. 345, 245 S.E. 2d 711 (1978); *State v. Allen, supra*, 282 N.C. 503, 194 S.E. 2d 9. We are confident, however, that the *Chambers* rule still applies "where an automobile is stopped on or near a public street or highway and there is probable cause to search at the scene. . . ." *State v. Jones, supra*, 295 N.C. at 354, 245 S.E. 2d at 716.

Defendant's first assignment of error is overruled.

[2] Defendant's second and third assignments of error relate to the admission of testimony concerning Officer Pence's identification of him on the morning of 29 November and a lineup identification of him by Mrs. Robbins at 11:00 a.m. on that same day. Defendant does not contend that either of these identifications is itself constitutionally suspect; instead, he claims that both were impermissibly tainted by his allegedly illegal arrest. These assignments thus present the issue of the legality of defendant's arrest.

Under General Statute 15A-401(b)(2), when a felony offense has been committed out of an officer's presence the officer may arrest without a warrant any person who he has probable cause to believe committed it. "A warrantless arrest is based on probable cause if the facts and circumstances known to the arresting officer warrant a prudent man in believing that a felony has been committed and the person to be arrested is the felon." *State v.*

*Shore*, 285 N.C. 328, 335, 204 S.E. 2d 682, 686 (1974). This standard is the same as that required by the United States Constitution. *See McCray v. Illinois*, 386 U.S. 300, 304 (1967).

We think on these facts there was probable cause for defendant's arrest. Officer Hunter, who made the arrest, was aware that there had been a robbery at the Bel-Air Motel. He was aware that suspects in that robbery had eluded capture and escaped into the woods less than a mile from the spot he was patrolling. Hunter had been given a rough description of one of the suspects as a black male wearing dark clothing and about 18 or 19 years old. The description also gave an approximate height of the suspect, but the record does not disclose what that height was.

Officer Hunter first saw defendant at around 4:15 to 4:20 a.m. on the morning of 29 November. At that time he saw defendant come onto North Tryon Street off a bank or hill that led into a wooded area. Defendant roughly matched the description of one of the suspects. Officer Hunter stopped defendant. On closer examination, he saw that defendant was wet all over and soaking wet from mid-thigh to his feet. Officer Hunter also testified that defendant was covered with grass and "beggar-lice." Officer Hunter placed defendant under arrest and then took him to Officer Pence for identification.

In summary, Officer Hunter first saw defendant on a bank near a wooded area. Defendant matched the general description he had received of a robbery suspect. Defendant's appearance gave rise to a reasonable inference that he had been through a wooded area. Under these circumstances, we think Officer Hunter had probable cause to believe that a felony had been committed and that defendant had committed it. Defendant's arrest was therefore legal.

Even had defendant's arrest been illegal, he has not made a sufficient showing to justify exclusion of the identification testimony. Under our decision in *State v. Finch*, 293 N.C. 132, 235 S.E. 2d 819 (1977), an illegal arrest does not make inadmissible per se otherwise competent identification testimony. Under *Finch*, an illegal arrest will lead to suppression of identification testimony only if it "created a likelihood that the pretrial confrontation was so 'conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and

justice.' " *Id.* at 139, 235 S.E. 2d at 823, *quoting State v. Hender-son*, 285 N.C. 1, 9, 203 S.E. 2d 10, 16 (1974); *see also United States v. Young*, 512 F. 2d 321 (4th Cir. 1975), *cert. denied*, 424 U.S. 956 (1976), and other cases cited and relied on in *Finch; but see Crews v. United States*, --- A. 2d ---, 23 Crim. L. Reptr. 2381 (D.C. 1978). Defendant does not claim that his arrest had any such effect on either of the pretrial confrontations about which testimony was introduced.

Defendant's second and third assignments of error are overruled.

No error.

Justice BRITT took no part in the consideration or decision of this case.