STATE OF NORTH CAROLINA v. CHARLES HARRIS WRENN

No. 383A84

(Filed 5 March 1986)

1. **Rape and Allied Offenses § 4.3— evidence concerning prior sexual offense against same victim—exclusion proper**

In a prosecution of defendant for first degree sexual offense and first degree burglary, the trial court did not err in prohibiting defendant's attempt to elicit testimony from the victim that she had received psychiatric treatment subsequent to a prior unrelated sexual assault in which she was the prosecuting witness, though defendant claimed that the excluded evidence was relevant to the issue of the victim's credibility because her testimony was the only evidence that a sexual crime had been committed, since the evidence was inadmissible under the Rape Shield Statute; the evidence was irrelevant to the case being tried; and the relevance of the evidence, if any, was outweighed by its prejudicial effect.

2. **Searches and Seizures § 8— warrantless arrest—probable cause—warrantless search of vehicle proper**

In a prosecution for first degree sexual offense and burglary, the trial court did not err in denying defendant's motion to suppress physical evidence seized from his automobile and the victim's subsequent identification of him as her attacker as being the fruits of an illegal arrest since defendant was actually placed under arrest when an officer ordered him out of his car at gunpoint and told him to keep his hands visible; the proximity of defendant to the location where the offenses were committed and the similarity of defendant's appearance to the description which had been reported to the police provided the arresting officer with the element of probable cause necessary to effectuate the arrest; once the officer made a lawful arrest, he was authorized to search the passenger compartment of defendant's vehicle and items found therein were properly seized; and the existence of probable cause for defendant's arrest validated the victim's subsequent identification of defendant as her assailant.

3. **Criminal Law § 154.1— jury instructions—transcript unavailable—right to appellate review not denied**

There was no merit to defendant's contention that his right to meaningful appellate review was denied because the court reporter's tape recording of the judge's charge to the jury was lost since nothing in the record disclosed what, if any, efforts were made by defense counsel to reconstruct the judge's charge to the jury so as to present a complete and accurate record on appeal; neither counsel at trial noted any objection or exception to the charge; and there were no improper comments by the prosecutor in his closing argument with regard to defendant's post-arrest silence or failure to testify which would require curative instructions by the trial court.

Justice BILLINGS did not participate in the consideration or decision of this case.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment plus fifteen years entered by *Freeman, J.*, at the 22 March 1984 Criminal Session of Superior Court, GUILFORD County, upon jury verdicts of guilty of first-degree sexual offense and first-degree burglary in violation of N.C.G.S. §§ 14-27.4(a)(2) and 14-51 respectively. Defendant's motion to bypass the Court of Appeals on the burglary conviction was allowed by this Court on 4 October 1984.

*Lacy H. Thornburg, Attorney General, by Thomas J. Ziko, Assistant Attorney General, for the State.*

*S. Mark Rabil for defendant-appellant.*

FRYE, Justice.

Defendant was charged in separate bills of indictment with first-degree sexual offense in violation of N.C.G.S. § 14-27.4(a)(2) and first-degree burglary in violation of N.C.G.S. § 14-51. Evidence for the State tended to show that in the early morning hours of 5 January 1984, victim[1] was awakened when she felt someone lying on her back. She also felt the barrel of a revolver placed at her right temple. The man, defendant in this case, told the victim to roll over and then proceeded to insert one of his fingers into victim's vagina several times. Defendant also forced victim to perform fellatio on him. After this act transpired, defendant left victim's apartment carrying with him her copper-colored nightgown which she was wearing at the time the sexual offenses were committed. Victim remained on her bed for a few minutes, checked the locks on the doors in her apartment, and then reported the incident to the police.

Officer Appel of the High Point Police Department promptly responded to a call which reported a burglary at the victim's apartment. The suspect was described as a white male, dressed in a dark sweatsuit and possibly wearing a knit hat. The police were also alerted that the suspect was possibly armed. As the officer approached the apartment complex, he observed a vehicle leaving the complex which was being operated by a man fitting the description of the suspect in the burglary. Officer Appel stopped the

---

1. We find it unnecessary to expose the victim to further embarrassment by using her name in this opinion.

vehicle, ordered defendant to step down onto the ground, and "patted down" defendant to determine whether he was carrying a weapon. The officer then searched the vehicle and discovered a loaded revolver in a holster in an unlocked console in the front seat of the vehicle. Upon finding the revolver, the officer arrested defendant on the charge of carrying a concealed weapon. After defendant was arrested, the arresting officers were asked by someone at the police headquarters to determine if there was a copper-colored nightgown in the vehicle. An officer searched the vehicle and discovered a bag in the passenger compartment which contained several articles of clothing, including a copper-colored nightgown. Subsequent to defendant's arrest, victim identified the copper-colored nightgown as the one which defendant took from her apartment and identified defendant as her attacker.

Defendant did not testify at trial. The jury returned verdicts of guilty on the charges of first-degree sexual offense and first-degree burglary.

I.

[1] Defendant contends that the trial court erred in prohibiting his attempted cross-examination of the victim concerning psychiatric treatment that she had received and unrelated charges that she had made against another person in a previous judicial proceeding.

During his cross-examination of the victim, defense counsel attempted to elicit testimony that the victim had received psychiatric treatment subsequent to a prior unrelated sexual assault in which she was the prosecuting witness. Upon objection by the State, the court held an *in camera* hearing to determine the admissibility of the evidence. The evidence at the *in camera* hearing showed that the victim in this case had previously accused another man of sexually assaulting her. The defendant in that case pleaded guilty to crime against nature and was placed on probation. Subsequent to the defendant being placed on probation, victim claimed that he called and threatened her. As a result of the victim's allegation, a probation revocation hearing was held at which both the victim and the defendant testified under oath. The presiding judge at the probation revocation hearing declined to revoke the defendant's probation.

At the conclusion of the *in camera* hearing, the trial court prohibited defense counsel from introducing this evidence on the grounds that: (1) the proffered evidence was inadmissible under the Rape Shield Statute, N.C.G.S. § 8-58.6 (1981); (2) the evidence was irrelevant to the case being tried; and (3) even if the evidence was relevant, it was outweighed by its prejudicial effect. Defendant contends that the trial court abused its discretion and committed prejudicial error by preventing inquiry into the challenged evidence because such evidence was relevant to the issue of credibility of victim since her testimony was the only evidence that a sexual crime had been committed.

"It is well settled that in a criminal case an accused is assured his right to cross-examine adverse witnesses by the constitutional guarantee of the right of confrontation." *State v. Newman*, 308 N.C. 231, 254, 302 S.E. 2d 174, 187 (1983). However, it is also a well-established principle that "the scope of cross-examination rests largely within the discretion of the trial court and its ruling thereon will not be disturbed absent a clear showing of abuse of discretion." *State v. Hinson*, 310 N.C. 245, 254, 311 S.E. 2d 256, 263, *cert. denied*, --- U.S. ---, 83 L.Ed. 2d 78 (1984); *see also State v. Burgin*, 313 N.C. 404, 329 S.E. 2d 653 (1985). We have carefully reviewed defendant's contentions under the circumstances presented and find no clear showing of abuse of discretion by the trial court.

Defendant contends, relying on *Alford v. United States*, 282 U.S. 687 (1931), that the trial court

abused its discretion and committed prejudicial error by cutting off all inquiry into evidence that the prosecuting witness had made false accusations against another defendant in a prior sexual offense case, and by cutting off all inquiry into evidence that she had received psychiatric treatment in connection with that incident.

However, defendant fails to show that the accusations were false. The defendant in that case pleaded guilty to a sexual offense, thus admitting his guilt. The fact that the defendant's probation was not revoked based on subsequent allegation that the defendant had called and threatened the victim is not sufficient, standing alone, to prove that the victim's accusation was false. There could be, and often are, other reasons why a judge does not

revoke one's probation in a given case. Here, the trial judge correctly held an *in camera* hearing to determine whether the cross-examination should be allowed to go forward in the presence of the jury, and decided on several grounds not to permit it. In his decision we find no abuse of discretion. *See State v. Hinson*, 310 N.C. 245, 311 S.E. 2d 256, *cert. denied*, --- U.S. ---, 83 L.Ed. 2d 78.

## II.

[2]  Defendant next assigns as error the denial of his motion to suppress physical evidence seized from his automobile and the victim's subsequent identification of him as her attacker as being the fruits of an illegal arrest.

Prior to the commencement of his trial, defendant made a motion to suppress the physical evidence retrieved from his vehicle on the night that the victim was sexually assaulted. A suppression hearing was held on 23 February 1984 to consider the merits of defendant's motion. The motion was denied on the grounds that the arresting officers had probable cause to arrest defendant and that the evidence in issue was lawfully seized pursuant to that arrest.

The trial court's finding that the officer had probable cause to arrest defendant was based on the following evidence: At 3:24 a.m., the police in the High Point area were alerted that a burglary had been committed at an apartment complex on Chester Ridge Drive. The suspect was described as a white male, dressed in dark clothing, possibly wearing a knit hat and armed with a handgun. Officer Appel was in the vicinity of the victim's apartment and arrived at the apartment complex approximately two minutes after receiving the call. As the officer approached the apartment complex, he observed a vehicle traveling on the only exit from the complex. The officer noted that the vehicle was operated by a white male wearing dark clothing. Officer Appel stopped the vehicle, ordered the operator, defendant in this case, out of the vehicle, and "frisked" him. A search of the passenger compartment of the automobile yielded a loaded revolver and a nightgown which the victim identified as the one her assailant had taken from her.

Defendant contends that the evidence seized from his vehicle and the victim's subsequent identification of him as her attacker

should have been excluded at trial because they were obtained in violation of his rights under the Fourth Amendment of the United States Constitution. We disagree.

In resolving this argument, we must first determine when defendant was actually placed under arrest. Officer Appel testified that he told defendant he was under arrest only after he discovered a revolver in a console in the passenger compartment of defendant's vehicle. However, defendant argues in his brief, and the State apparently agrees, that defendant was placed under arrest when Officer Appel ordered defendant out of his car at gunpoint and told defendant to keep his hands visible. *See State v. Ausborn*, 26 N.C. App. 481, 216 S.E. 2d 396 (1975).

"A formal declaration of arrest by an officer is not a prerequisite to the making of an arrest." *State v. Zuniga*, 312 N.C. 251, 260, 322 S.E. 2d 140, 145 (1984); *see also State v. Tippett*, 270 N.C. 588, 596, 155 S.E. 2d 269, 275 (1967). Also, "an officer's statement that a defendant was or was not under arrest is not conclusive." *State v. Zuniga*, 312 N.C. 251, 259, 322 S.E. 2d 140, 145; *State v. Sanders*, 295 N.C. 361, 376, 245 S.E. 2d 674, 684, *cert. denied*, 454 U.S. 973, 70 L.Ed. 2d 392 (1981).

This Court has held that "[w]hen a law enforcement officer, by words or actions indicates that an individual must remain in the officer's presence or come to the police station against his will, the person is for all practical purposes under arrest if there is a substantial imposition of the officer's will over the person's liberty." *State v. Sanders*, 295 N.C. at 376, 245 S.E. 2d at 684, *cert. denied*, 454 U.S. 973, 70 L.Ed. 2d 392.

In the instant case, the arresting officer testified that he stopped defendant's vehicle, opened the door, ordered defendant out of the car at gunpoint, and advised defendant "to keep his hands where I could see them." Since the officers thought defendant to be the suspect in the burglary which they were investigating, it is unlikely that they were going to willingly allow defendant to leave their presence. Applying the rules stated above, we find that defendant was under arrest at the point the officers held him at gunpoint as a suspect in the reported crime.

Since this case involves a warrantless arrest, we must now consider whether the police officers had probable cause to believe

that defendant had committed the reported crime. "To be lawful, a warrantless arrest must be supported by probable cause." *State v. Zuniga*, 312 N.C. at 259, 322 S.E. 2d at 145. This Court defined probable cause in *State v. Joyner*, 301 N.C. 18, 21-22, 269 S.E. 2d 125, 128 (1980) as follows:

> Probable cause exists when there is 'a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty.' (Citations omitted.) The existence of probable cause depends upon 'whether at that moment the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' (Citation omitted.)

Applying the rule cited above to the instant case, we find that the officers had probable cause to arrest defendant. Defendant was apprehended almost immediately after the reported felony had been committed as he exited victim's apartment complex at an early morning hour when there was no other vehicular or pedestrian traffic in the area. Defendant's appearance at the time of the arrest fit victim's general description of her assailant, *i.e.*, white male wearing dark clothing. Under these circumstances, we find that the proximity of defendant to the location where the offenses were committed and the similarity of defendant's appearance to the description which had been reported to the police provided the arresting officer with the element of probable cause necessary to effectuate the arrest. *See State v. Joyner*, 301 N.C. 18, 22, 269 S.E. 2d 125, 129.

Once the officer made a lawful arrest in this case, he was authorized to search the passenger compartment of the vehicle. *See generally, New York v. Belton*, 453 U.S. 454, 69 L.Ed. 2d 768 (1981). "When a police officer has effected a lawful custodial arrest of an occupant of a vehicle, the officer may, as a contemporaneous incident of that arrest, conduct a search of the passenger compartment of the vehicle extending to the contents of containers found within the passenger compartment." *State v. Cooper*, 304 N.C. 701, 703, 286 S.E. 2d 102, 103-04 (1981); *see also New York v. Belton*, 453 U.S. 454, 69 L.Ed. 2d 768. Therefore, the evidence was properly seized.

The victim's subsequent identification of defendant was also lawfully obtained. The existence of probable cause for defendant's arrest validates the victim's subsequent identification of defendant as her assailant. *See generally State v. Mathis*, 295 N.C. 623, 247 S.E. 2d 919 (1978). We note, however, that even had defendant's arrest been unlawful, the victim's identification of defendant as her assailant would not have necessarily been inadmissible. In *State v. Finch*, 293 N.C. 132, 139, 235 S.E. 2d 819, 823 (1979), this Court held that an illegal arrest will lead to suppression of identification testimony only if it [the arrest] "created a likelihood that the pretrial confrontation was so 'conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and injustice.'" *See also State v. Mathis*, 295 N.C. 623, 247 S.E. 2d 919. We find no evidence in this case which would support the suppression of the victim's identification of defendant, even if defendant's arrest had been unlawful. This assignment of error is without merit.

III.

[3] Defendant contends that his right to meaningful appellate review under N.C.G.S. § 7A-27(a) was denied, since the court reporter's tape recording of the judge's charge to the jury was lost, and therefore he is entitled to a new trial.

On 10 August 1984, approximately five months after defendant's trial ended, the court reporter informed defendant's counsel that the tape recording containing the judge's charge to the jury had been lost. The parties did not include the judge's charge to the jury in the record.

In the record (*Statement of Transcript of Judge's Charge*), it is stated that neither counsel at trial noted any objection nor exception to the charge. Therefore, defendant may not now on appeal raise objections to the judge's charge to the jury. *See* Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure. Defendant, nevertheless, contends that he is prejudiced by the absence of the judge's charge, since he is entitled to have this Court review the charge to determine whether it contained "plain error" which would warrant a reversal of his conviction, notwithstanding his failure to object to the charge at trial. Specifically, defendant contends that he is prejudiced by the absence of the charge to the jury because his attorney on appeal is precluded

from effectively arguing two of his assignments of error regarding comments made by the prosecuting attorney during his closing argument regarding defendant's post-arrest silence. Defendant contends that without the judge's charge to the jury, this Court cannot determine whether adequate, fair, and sufficient curative instructions were given to the jury to attempt to overcome the prejudicial effects of the prosecutor's comments. Defendant also claims that there is a possibility in the instant case that the trial court may have committed "plain error" by failing to instruct on an essential element of the crimes charged by improperly commenting or expressing an opinion as to the defendant's guilt or by incorrectly instructing the jury "where it can fairly be said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

We note first that nothing in the record or briefs of the defendant or the State disclosed what, if any, efforts were made by defense counsel to reconstruct the judge's charge to the jury so as to present a complete and accurate record on appeal.[2] *See State v. Fields*, 279 N.C. 460, 183 S.E. 2d 666 (1971).

We will first address defendant's argument that the prosecutor made improper comments on defendant's failure to testify at his trial and the exercise of his right to remain silent after he was arrested. In his closing argument the prosecutor said:

> But what did Officer Appel tell you? Sometime later on he asked Mr. Wrenn again when he was doing his reports and was in a position—
>
> MR. MICHAEL: Objection.
>
> THE COURT: I will sustain that objection.
>
> MR. CARROLL: Officer Appel testified to you that he made some further effort to get a name from the Defendant and was unsuccessful.
>
> MR. MICHAEL: Objection, Your Honor.
>
> MR. CARROLL: That is the testimony, Judge.

2. In his brief, counsel for defendant states that "appellate rule 11(c), allowing for judicial settlement of the record, would have been of no avail," but no reason is given as to why this is so.

THE COURT: Overruled. Go ahead.

MR. CARROLL: So I argue and contend to you, ladies and gentlemen, Mr. Wrenn was there at three o'clock in the morning. There is no question about that. There is no good explanation as to why he was there. He says that he was there seeing some girl. We don't have her name at this point. He couldn't give the apartment number. He was there two hundred yards from [the victim's] apartment. And look at the officer's response time.

. . . .

What did Officer Appel tell you about the Defendant's reaction. You heard how long that [sic] he has been involved in law enforcement. All of his experience. Five years or so with the High Point Police Department. Three and a half years with the UNC-G Police, involved in the Military Police before that. Based on his training experience, he told you that he thought it was unusual that the Defendant reacted the way he did. Why am I being arrested? What can I do for you officers? He didn't say a thing.

One of defendant's two objections to the prosecutor's comments was overruled. Defendant did not at that time request that curative instructions be given nor did he make such a request in the jury instruction conference. As previously noted, defendant did not object to the judge's charge to the jury.

As part of this assignment of error, defendant contends that the prosecutor made some improper comments on defendant's failure to testify at trial. We have carefully read the prosecutor's comments and we fail to find any comments, unfavorable or otherwise, on defendant's failure to testify at trial. We also note that in the jury instruction conference the judge stated that he would give an instruction in his charge to the jury regarding defendant's constitutional right not to testify in a proceeding against him. Even in the absence of the charge to the jury, we have no reason to assume that such an instruction was not given by the judge. This argument is meritless.

Relying, *inter alia*, on *State v. Castor*, 285 N.C. 286, 204 S.E. 2d 848 (1974), defendant also contends that the prosecutor made some improper comments on his post-arrest silence, thus violating

the constitutional principle that a defendant who does not testify may not have his post-arrest silence used against him at trial. The prosecutor's comments related to defendant's failure to give the arresting officer the name of the woman that defendant claimed to have visited at victim's complex. We note that the prosecutor's argument was a restatement of the evidence which defendant elicited from the arresting officer on cross-examination at which time defendant made no objection or motion to strike. Assuming, *arguendo*, that even under these circumstances, the prosecutor's argument was improper as a comment on defendant's post-arrest silence, since defendant objected to this portion of the argument, we must determine whether it was prejudicial. Since the alleged error is of constitutional magnitude, the test is provided by N.C.G.S. § 15A-1443(b) as follows:

> (b) A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless.

In the instant case there was direct testimony that defendant broke into victim's apartment, awakened her, placed a revolver at her head, forced her to have oral sex with him and then left the apartment, taking with him victim's copper-colored nightgown. Shortly after the crimes were committed, the police were given a description of the suspect. Because of defendant's similarity to the dispatched description, and his close proximity to the apartment complex, defendant was stopped by the police. A search of his vehicle produced a revolver and victim's nightgown. Victim identified defendant as the perpetrator subsequent to his arrest. In light of this evidence, we do not believe that the prosecutor's comments had any impact on the defendant's conviction. Thus, we find any error harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1983); *State v. Taylor*, 304 N.C. 249, 277-78, 283 S.E. 2d 761, 779 (1981).

Defendant also contends that it is possible that this Court would find other instances of "plain error," if we could examine the judge's charge to the jury in the instant case. However, in order for this Court to grant a new trial under the "plain error" exception to Rule 10(b)(2), a judge's charge must be so fundamen-

tally flawed that it can be fairly said that the mistake probably had an impact on the defendant's conviction. *State v. Moore*, 311 N.C. 442, 319 S.E. 2d 150 (1984); *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983). As indicated earlier herein, the evidence for the State was straightforward and direct and virtually uncontradicted. A brief instruction conference was held in which the trial judge indicated that he would give several routine instructions on collateral matters and then read the pattern jury instructions defining the two crimes at issue. The judge did not propose to instruct on any lesser included offenses. There was only one defendant. Given the simplicity of the case and the fact that defense counsel failed to make any objections at the conclusion of the judge's charge, it is highly improbable that any error that may have been made in the instructions was so fundamental or grave as to have impacted on the jury verdict. Thus, no prejudicial error has been shown.

No error.

Justice BILLINGS did not participate in the consideration or decision of this case.